Thomas M. Downey (CSBN 142096)
Sara J. Savage (CSBN 199344)
BURNHAM BROWN
A Professional Law Corporation
1901 Harrison Street, Suite 1400
Oakland, California  94612-3523
Telephone:	(510) 444-6800
Facsimile:	(510) 835-6666
Email:	tdowney@burnhambrown.com
	ssavage@burnhambrown.com

Attorneys for Plaintiffs
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | No. _____ |
|---|---|
| Plaintiffs, | **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| UNITED REVOLVER CLUB OF SACRAMENTO, INC., a California Corporation, | |
| Defendant. | |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiffs, those CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Underwriters") subscribing to insurance policies numbered L200615799, L200715799, L200815799, L200915799, LM201043526, and LM201143526, by their attorneys, and for their Complaint for Declaratory Judgment against defendant UNITED REVOLVER CLUB OF SACRAMENTO, INC. ("URC"), allege as follows:

## INTRODUCTION

1. This is an action pursuant to 28 U.S.C. § 2201 seeking a judicial determination that no insurance coverage exists under the above-referenced insurance policies for claims asserted against URC in two state court actions pending in the Superior Court of California for the County of Sacramento styled *Willis v. City of Sacramento, et al.*, bearing case number 34-2015-00185035 ("***Willis Action***") and *Gosling v City of Sacramento, et al.*, bearing case number 34-2016-00194832 ("***Gosling Action***"), which have been consolidated and are referred to herein as the "Consolidated Action."  A copy of the Complaint filed in the ***Willis Action*** is attached as **Exhibit A** and a copy of the Complaint filed in the ***Gosling Action*** is attached as **Exhibit B**.

2. Underwriters issued six (6) substantively identical commercial general liability insurance policies to URC which cover consecutive, one-year policy periods from June 8, 2006 through June 8, 2012, respectively (the "Policies").[1] A true and correct copy of Policy LM201043526 with effective dates of June 8, 2010 to June 8, 2011, which contains substantially identical terms and provisions as all other Policies, is attached as **Exhibit C** as an exemplar.

3. Each of the six consecutive policies contain $1 million per occurrence and $2 million aggregate limits of liability.

4. Plaintiffs in the Consolidated Action commenced their lawsuits against the City of Sacramento ("the City"), URC and others alleging they suffered bodily injury through exposure to lead, lead dust, and lead particulates from June 2004 through January 18, 2015.  The Consolidated Action further alleges that the harmful exposure occurred at a shooting range

---

[1] The 2011-2012 Policy, No. LM201143526, was cancelled mid-term at the request of URC.

2
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON COMPLAINT FOR          No. _____
DECLARATORY RELIEF

known as the James Mangan Rifle & Pistol Range (the "Gun Range") and at the homes of the individuals that visited the shooting range.

5. As a result of the injuries, the Plaintiffs in the Consolidated Action allege that they sustained permanent disability, general damages, past and future medical expenses, past and future loss of earnings and loss of consortium.

6. Underwriters are participating in the defense of URC in the Consolidated Action subject to a full and complete reservation of rights, including the right to seek reimbursement of all sums paid to defend URC in the Consolidated Action and the right to withdraw from the defense of URC in the Consolidated Action.

7. Underwriters' Policies contain a "Lead Contamination Exclusion" that broadly precludes coverage for bodily injury arising out of exposure to "any form of lead."

8. Lead, lead dust, and lead particulates constitute "any form of lead" under Underwriters' Policies.

9. Underwriters' Polices also contain a "Pollution Exclusion" that excludes coverage for bodily injury from alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," a term defined in part by the Policies to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

10. Lead, lead dust, and lead particulates constitute "pollutants" under Underwriters' Policies.

11. Plaintiffs in the Consolidated Action have admitted under oath that their alleged injuries arose solely from exposure to lead, lead dust, and lead particulates.

12. As a result, there is no potential for coverage under Underwriters' Policies for the Consolidated Action because, among other things, any damages awarded to plaintiffs would be for bodily injury excluded by the Policies' Lead Contamination Exclusion and/or Pollution Exclusion.

13. Therefore, Underwriters seek a declaratory judgment that no insurance coverage exists under the Polices for the claims asserted against URC in the Consolidated Action and that

Underwriters have no duty to defend or indemnify URC. Underwriters also seek a declaratory judgment that Underwriters are entitled to withdraw the defense they are currently providing URC.

14. Finally, Underwriters seek an award for reimbursement of the full amount of legal fees and costs paid by Underwriters to defend URC in the Consolidated Action.

## THE PARTIES

15. Plaintiffs Certain Underwriters at Lloyd's, London are individual foreign syndicates organized under the laws of the United Kingdom who underwrite insurance through managing agencies also organized under the laws of the United Kingdom, who in turn trade through the Lloyd's insurance market.

16. Each of the syndicates and their managing agencies' principal places of business are located in the United Kingdom. None of the syndicates nor their managing agencies have offices or other locations in the State of California.

17. Each of the syndicates (and their managing agents) share a proportion of the risk on each insurance policy issued to URC. Based upon information and belief, each of the members of the syndicates' potential risk associated with both the *Willis Action* and *Gosling Action* exceed $75,000.00.

18. Upon information and belief, Defendant United Revolver Club of Sacramento, Inc. is a California corporation formed pursuant to California law, with its principal place of business located in the County of Sacramento, California, and is a citizen of the State of California.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because (a) Underwriters are citizens of a foreign state (United Kingdom) and URC is a citizen of California, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Pursuant to 28 U.S.C. § 1391(a)(2), venue is appropriate in the Eastern District of California because jurisdiction is founded upon diversity of citizenship, and the events giving

rise to the claims asserted in the Consolidated Action occurred in the Eastern District of California.

### CONSOLIDATED ACTION

21. Plaintiffs in the Consolidated Action allege that they suffered bodily injury through exposure to lead and other toxic and hazardous materials associated with the Gun Range and have alleged egregious bodily harm based upon the release of pollutants from the Gun Range.

22. Plaintiffs in the Consolidated Action allege that the defendants were and are the owners, occupants, maintainers, inspectors, operators, equipment providers, lessees, safety equipment providers, proprietors and/or managers of the Gun Range.  URC, plaintiffs allege, controlled, and was responsible for the use, maintenance, repair, inspection, supervision, set up, staging, and preparation of the Gun Range.

23. Plaintiffs in the Consolidated Action further allege that URC and other defendants failed to adopt and/or implement adequate procedures for work on the subject properties and adjacent and nearby public properties and easements, permitting them to be in a dangerous, defective and hazardous condition in an area that allowed for the lawful passage of persons, so as to create dangerous conditions of the properties.

24. Plaintiffs in the Consolidated Action allege that defendants had notice of these conditions and wrongfully failed to correct them, including failing to adequately ventilate the Gun Range.  Plaintiffs further allege that from August 1, 2010 through January 18, 2015, they were exposed to lead and other pollutants at the Gun Range, as well as at their home due to the alleged migration of such materials on their clothing.[2]

25. Plaintiffs in the Consolidated Action claim that the defective and hazardous conditions at the subject properties caused plaintiffs to suffer lead poisoning, and were a substantial factor in bringing about injuries and damages to them. The injuries allegedly sustained by the Plaintiffs in the Consolidated Action included "injury to their bodies and shock

---

[2] One Plaintiff, Kenneth Gosling, alleges his exposure dates back to June 2004.

and injury to their respective nervous systems and persons, all of which said injuries have caused and continued to cause said plaintiffs great mental, physical and nervous pain and suffering." (**Exhibit A**, *Willis Action*, p. 19:27-28.)

## UNDERWRITERS' POLICIES

26. The six (6) Policies issued by Underwriters to URC are substantially identical in terms of the material terms and provisions at issue here.

27. The Policies are subject to per occurrence and aggregate limits of liability, e.g., $1M per occurrence/$2M in the aggregate.

28. The Policies' insuring agreement under Coverage A provides that Underwriters "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." **Exhibit C,** Form LRS CG0001C NRA 04 07, Page 1 of 20. The insuring agreement further provides that Underwriters "have the right and duty to defend the insured against any 'suit' seeking those damages[,]" but that Underwriters "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

29. In relevant part, the Policies provide coverage for "bodily injury" that is caused by an "occurrence" that takes place in the "coverage territory" during the policy period. *Id.*

30. "Bodily injury" is defined to mean sickness or disease sustained by a person, including death resulting from any of these at any time. *Id.* at Page 16 of 20.

31. The Policies define "occurrence" to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Id.* at Page 18 of 20.

32. The Polices contain, however, the following "Lead Contamination Exclusion":

This insurance does not apply to:

\* \* \*

**4.   Lead Contamination Exclusion**

    **a.** "Bodily injury," "property damage" or "personal and advertising     injury" arising out of the actual or alleged or suspected:

/ / /

      **(1)**    Ingestion, inhalation, absorption, or prolonged physical exposure or threat of exposure to lead in any form, or goods or products containing any form of lead; or

      **(2)**    Use of any form of lead in constructing or manufacturing any good, product or structure: or

      **(3)**    Removal of any form of lead from any good, product or structure, or from any body of water and/or watercourse, including but not limited to an ocean, lake, estuary or marsh, or any land, and/or soil of any nature whatsoever;

      **(4)**    Manufacture, sale, transportation, storage or disposal of lead or goods or products containing any form of lead; or

      **(5)**    Payment for the investigation or defense of any claim or "suit" or any loss, cost, expense, fine or penalty related to **(1)**, **(2)**, **(3)**, or **(4)** above.

*See* **Exhibit C**, Form LRS CG0001C NRA 04 07, Page 9 of 20.

33. The Policies also contain a "Pollution Exclusion," which provides, in relevant part:

This insurance does not apply to:

          * * *

(1)   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

*Id.* at Page 2-3 of 20.

34. "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at Page 19 of 20.

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Relief - No Duty to Defend)**

35. Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

///

///

36. URC tendered the Consolidated Action to Underwriters for defense and indemnity, and Underwriters agreed to defend URC subject to a full and complete reservation of rights, including the right to seek reimbursement for defense costs, and the right to withdraw from the defense if it were to be determined that the Consolidated Action did not give rise to a potential for coverage under Underwriters' Policies.

37. An actual controversy has arisen between Underwriters and URC in that Underwriters contend that there is no potential for coverage under the Policies for the claims asserted in the Consolidated Action and that any duty to defend that may have existed has been extinguished.

38. The Policies contain a Lead Contamination Exclusion that operates to exclude coverage for bodily injury arising out of the actual or alleged or suspected exposure or threat of exposure to lead in any form, among other things.

39. The Policies contain a Pollution Exclusion that operates to exclude coverage for bodily injury which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

40. The Consolidated Action seeks damages for alleged bodily injury arising from alleged exposure to lead, lead dust, and lead particulates.

41. Plaintiffs in the Consolidated Action have admitted under oath that their alleged injuries arise solely from exposure to lead, lead dust, and lead particulates.

42. Accordingly, Underwriters are entitled to a judicial declaration that, by operation of the Lead Contamination Exclusion and/or the Pollution Exclusion, there is no potential coverage for, nor a duty to defend, the claims asserted in the Consolidated Action under the Policies, or alternatively that any duty to defend that might have existed has been extinguished, and that Underwriters may withdraw its defense.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief – No Duty to Indemnify)**

42. Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON COMPLAINT FOR DECLARATORY RELIEF   No. _____

43. URC tendered the Consolidated Action to Underwriters for defense and indemnity, and Underwriters agreed to defend URC subject to a full and complete reservation of rights, including the right to deny indemnity, the right to seek reimbursement of defense costs, and the right to withdraw the defense if it were determined that the Consolidated Action did not give rise to a potential for coverage under Underwriters' Policies.

44. An actual controversy has arisen between Underwriters and URC in that Underwriters regarding the duties and obligations of the parties under the Policies regarding the Consolidate Action.

45. The Policies contain a Lead Contamination Exclusion that operates to exclude coverage for bodily injury arising out of the actual or alleged or suspected exposure or threat of exposure to lead in any form, among other things.

46. The Policies contain a Pollution Exclusion that operates to exclude coverage for bodily injury which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

47. The Consolidated Action seeks damages for alleged bodily injury arising from alleged exposure to lead, lead dust, and lead particulates.

48. Plaintiffs in the Consolidated Action have admitted under oath that their alleged injuries arise solely from exposure to lead, lead dust, and lead particulates.

49. Accordingly, Underwriters are entitled to a judicial declaration that, by operation of the Lead Contamination Exclusion and/or the Pollution Exclusion, there is no potential coverage for the claims asserted in the Consolidated Action under the Policies, and therefore Plaintiff has no duty to indemnify URC for the claims.

### THIRD CLAIM FOR RELIEF

**(Reimbursement against URC)**

50. Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

///

51. The Consolidated Action alleges causes of action and damages against URC that were never potentially covered by the Policies.

52. Pursuant to California law, including the California Supreme Court decision in *Buss v. Superior Court* (1997) 16 Cal.4th 35, URC is entitled to recover the amounts paid for the defends of claims that were not covered by the Policies.

53. Underwriters seek an award of the legal fees and costs incurred in the defense of URC in the Consolidated Action in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment Against URC)

54. Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

55. The payments made by Underwriters for the defense of URC in the Consolidated Action has conferred a substantial benefit upon URC to the extent the defense related to uncovered claims and damages.

56. URC was unjustly enriched by Underwriters' payment of defense fees and costs to defend uncovered claims and damages in the Consolidated Action.

57. It would be inequitable and unjust for URC to retain the amounts paid by, and the benefits received from Underwriters.

58. Accordingly, Underwriters seeks an award for the full amount of fees and costs paid by Underwriters to defend URC in the Consolidated Action for which URC was unjustly enriched in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Underwriters pray for judgment against URC as follows:

1. For a declaration that Underwriters have no duty to defend URC against the claims alleged in the Consolidated Action;

2. For a declaration that Underwriters have no duty to indemnify URC for the claims alleged in the Consolidated Action;

///

3. For an award in Underwriters' favor and against URC, in an amount to reimburse Underwriters for the payment of legal fees and costs by Underwriters in the defense of URC in the Consolidated Action;

4. For Underwriters' costs of suit incurred herein; and

5. For such other and further relief as the Court deems appropriate.

DATED: March 6, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　BURNHAM BROWN


By **/ s / Thomas M. Downey**
　THOMAS M. DOWNEY
　SARA J. SAVAGE
　Attorneys for Plaintiff
　CERTAIN UNDERWRITERS
　AT LLOYD'S, LONDON

4836-2663-9798, v. 1